United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMAGESAILS, LLC,<br>Plaintiff,<br>v.<br>PRECISION SAILS,<br>Defendant. | Case No. 25-cv-00193-NW<br><br>**CLAIM CONSTRUCTION ORDER**<br>Re: ECF No. 45 |

Plaintiff ImageSails, LLC accuses Defendant Precision Sails of infringing U.S. Patent No. 10,618,618 (the "'618 patent"). The parties now seek construction of three terms found in claim 1 of the '618 patent. ECF No. 45.[1] The Court held a *Markman* hearing on July 29, 2026. ECF No. 76. Having considered the parties' arguments and evidence, the Court construes the terms as set forth below.

## I. BACKGROUND

### A. The '618 Patent

The '618 patent, entitled "Sail Printing Process," was issued on April 14, 2020, and is directed to "[a] process of printing an image or images on the sails of a watercraft or other wind powered objects without altering or compromising the efficacy of the sails." '618 patent at Abstract. Independent claim 1 recites:

> 1. A method for printing high-resolution images to wind-catching fabrics without compromising the performance of the wind-catching fabrics comprising:

[1] Other than citations to the '618 patent, record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

United States District Court
Northern District of California

identifying the size and shape of the wind-catching fabric; selecting at least one image to print to the wind-catching fabric; using image editing software to size the image to the proportions of the wind-catching fabric;

using image editing software to edit and prepare the image for three-dimensional software editing;

exporting a two-dimensional copy of the at least one image from the image editing software;

importing a three-dimensional image file with all geometric features of the wind-catching fabric, including a 1:1 dimension ratio and curvature of the wind-catching fabric;

importing the two-dimensional copy of the at least one image on the three-dimensional image file corresponding to the dimensions of the wind-catching fabric;

defining the size of the panels to include overlapping sections and margins for printing;

placing key lines on the at least one image;

exporting the panels as individual digital image files;

printing the image of the individual digital image files to the wind-catching fabric using a large-format digital printer, forming printed panels;

cutting the printed panels; and

sewing the panels together with a sailmaker's loom.

Figure 1 depicts the printing process of the claimed invention:

FIG 1



’618 patent, Fig. 1.

Figure 3 demonstrates a sail with an image printed via the process of the claimed invention:




Fig. 3

’618 patent, Fig. 3.

**B. Procedural History**

ImageSails initiated this action on January 6, 2025. ECF No. 1. The parties filed their joint claim construction statement on November 17, 2025. ECF No. 45. The parties filed their opening claim construction briefs on November 26, 2025 (ECF Nos. 46, 47), and their responsive briefs on December 11, 2025 (ECF Nos. 48, 51).

On January 27, 2026, the undersigned related the action to *ImageSails, LLC v. North Sails Group LLC*, Case No. 24-cv-07155-NW. ECF No. 55. The Court held a technology tutorial on February 17, 2026, and a *Markman* hearing on July 29, 2026. ECF Nos. 65, 96.

United States District Court
Northern District of California

### C. Agreed Constructions

The parties initially agreed upon the construction of 13 terms: (1) "wind catching fabric(s)," (2) "three-dimensional software editing," (3) "exporting," (4) "two-dimensional copy," (5) "importing," (6) "all geometric features," (7) "1:1 dimension ratio," (8) "importing the two-dimensional copy of the at least one image on the three dimensional image file," (9) "the panels," (10) "forming printed panels," (11) "cutting the printed panels," (12) sewing the panels together," and (13) "order of steps." ECF No. 45 at 2–6.

At the hearing, the parties informed the Court that they had further stipulated to the construction of two previously disputed terms: "key lines" and "sailmaker's loom."

## II. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (citation modified).

> Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." Those sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art."

*Id.* at 1314 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)).

Claim terms are defined by their "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art ['POSITA'] in question at the time of the invention." *Id.* at 1312–13. In ascertaining the ordinary meaning of a term, courts first look to the patent's claim terms, specification, and prosecution history, which is the patent's "intrinsic record." *Id.* The claim language is "of primary importance" when determining the bounds of the claimed invention and "[t]he specification necessarily informs the proper construction of the claims." *Id.* at 1316. Extrinsic evidence may elucidate relevant art, but such evidence is only considered within the context of intrinsic evidence. *Id.* at 1317–19. "Extrinsic

evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).

## III. DISCUSSION

Following the parties' notification at the hearing that they agreed on the constructions for "key lines" and "sailmaker's loom," three terms remain in dispute: "high-resolution," "image editing software," and "prepare the image."

### A. Gohstand Declarations

Before turning to the parties' arguments, the Court first addresses the three declarations submitted by Daniel Gohstand, the named inventor of the '618 patent and CEO of ImageSails. ECF Nos. 45-1, 46-1, 48-1. Mr. Gohstand purports to offer definitions of the disputed terms. *See id.* (all).

"A patentee 'may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history.'" *Alnylam Pharms., Inc. v. Moderna, Inc.*, 138 F.4th 1326, 1333 (Fed. Cir. 2025) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); additional citations omitted); *see Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1331 (Fed. Cir. 2021) ("Inventors are masters of their claims, and the words they use to describe and claim their invention are decisive and binding."). But "[i]t is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments, the patentee must 'clearly express an intent' to redefine the term." *Bradium Techs. LLC v. Iancu*, 923 F.3d 1032, 1044 (Fed. Cir. 2019) (citation modified); *see Bright Data Ltd. v. Code200, UAB*, No. 2023-2144, 2025 WL 2180736, at *4 (Fed. Cir. Aug. 1, 2025), *cert. denied*, 146 S. Ct. 1595 (2026) (noting "the high standard for lexicography"). Indications that a patentee intended to be his own lexicographer include using a "Definitions" section, setting a term off in quotation marks, and using the terms "defined below, "refer to," or "i.e." *Alnylam Pharms.*, 138 F.4th at 1333 (citations omitted); *Eye Therapies, LLC v. Slayback Pharma, LLC*, 141 F.4th 1264, 1270 (Fed. Cir. 2025) (citations omitted).

United States District Court
Northern District of California

Mr. Gohstand does not offer any explanation as to how he arrived at his definitions, including whether the terms are terms of art that a POSITA would understand. He instead simply states what each term purportedly means. Notably, none of Mr. Gohstand's definitions appear anywhere in the specification, nor is there anything in the specification that clearly expresses his intent to redefine any of these terms. *See Markman*, 52 F.3d at 980 ("As we have often stated, a patentee is free to be his own lexicographer . . . . The caveat is that any special definition given to a word must be clearly defined in the specification."). There is no "Definitions" section in the specification, nor are any terms set off in quotation marks with guidance or direction about how or where those terms are defined in the specification. And, because the parties do not submit the '816 patent's file history, the Court cannot determine if there was any intent to redefine those terms during the prosecution of the patent.

Accordingly, the Court declines to accept Mr. Gohstand's proposed definitions of these terms.

**B. Disputed Terms**

The parties seek construction of 5 terms: "high-resolution," "image editing software," "prepare the image," "key lines," and "sailmaker's loom."

**1. "high-resolution"**

| Disputed Term | ImageSails's Proposed Construction | Precision Sails's Proposed Construction | Court's Ruling |
|---|---|---|---|
| "high-resolution" | Plain and ordinary meaning[2] | Preferably RAW or .psd file or any dots per inch (DPI) or pixels per inch (PPI) of 100 or over | Plain and ordinary meaning |

[2] Although ImageSails initially proposed a different construction of "high-resolution" (ECF Nos. 45 at 2; ECF No. 46 at 8–9), at the hearing, ImageSails stated it agreed to the plain and ordinary meaning of the term.

Precision Sails argues for a narrow construction of "high-resolution." In support, Precision Sails relies on a portion of the specification that states "[i]mage must be high resolution, preferably RAW or .psd file for the best results." '618 patent at 4:33–34. Precision Sails's proposal suffers from two flaws. First, Precision Sails wrongly imports a limitation from the specification into the patent claims. *See Rex Med., L.P. v. Intuitive Surgical, Inc.*, 156 F.4th 1289, 1302 (Fed. Cir. 2025) (The Federal Circuit "'will not countenance the importation of claim limitations from a few specification statements or figures into the claims, particularly if those specification extracts describe only embodiments of a broader claimed invention.'") (quoting *Comput. Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008)); *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1345 (Fed. Cir. 2008) ("[T]he specification informs the meaning of the claims" but "courts must carefully avoid importing limitations from the specification into method claims."). The claim language does not support a construction of "high-resolution" that is limited to RAW or .psd files only. Indeed, the specification is not even so limited, as demonstrated by the use of the term "preferably." '618 patent at 4:34.

Second, Precision Sails fails to explain why the limitation of "any dots per inch (DPI) or pixels per inch (PPI) of 100 or over" should be included in this term's construction. Without support, the Court cannot entertain Precision Sails's proposal.

The Court therefore rejects Precision Sails's proposed construction. Finding that a person of ordinary skill in the art would understand the term "high resolution," the Court adopts a plain and ordinary meaning when construing this term. *See Phillips*, 415 F.3d at 1312–13.

**2. "image editing software"**

| Disputed Term | ImageSails's Proposed Construction | Precision Sails's Proposed Construction | Court's Ruling |
|---|---|---|---|
| "image editing software" | Software that manipulates the image | A computer program, software, or application like Photoshop, that resamples an image to achieve highest | Plain and ordinary meaning |

| Disputed Term | ImageSails's Proposed Construction | Precision Sails's Proposed Construction | Court's Ruling |
|---|---|---|---|
| | | resolution at full print size. The image is then resampled panel by panel to allow for a manageable file size while achieving highest possible resolution (100 dpi or above). | |

Precision Sails argues the '618 patent defines the term "image editing software" as set forth in its proposed construction. ECF No. 47 at 6–7 (citing '618 patent at 4:51–55); *see* '618 patent at 4:51–55 ("Photoshop™ (or other similar image editing software) resampling of the image is performed to achieve highest resolution at full print size. The image is then resampled panel by panel to allow for a manageable file size while achieving highest possible resolution (100 dpi or above)."). The intrinsic record does not support Precision Sails's assertion.

Simply pointing to language from a preferred embodiment in the specification is not enough. As noted above, there must be explicit intent that the patentee intended to be his own lexicographer. *See* § III(A), *supra*; *Bradium Techs.*, 923 F.3d at 1044. Precision Sails does not cite any part of the specification or file history that explicitly shows that the patentee intended to ascribe a special definition to "image editing software." The term also does not appear in a "Definitions" section, is not set off by quotation marks, and does not use any of the typical signals of lexicography. *See Alnylam Pharms.*, 138 F.4th at 1333; *Eye Therapies*, 141 F.4th at 1270. For these reasons, the Court finds that the '618 patent does not define the term.

Further, Precision Sails's use of the term "manageable file size" introduces ambiguity to the proposed construction, as it is unclear what makes a file "manageable." *See Hewlett-Packard Co.*, 2004 WL 5651068, at *27. For this reason, too, the Court rejects Precision Sails's proposed construction.

At the hearing, ImageSails abandoned its original proposed construction of "a computer

United States District Court
Northern District of California

program, software, or application used to prepare, size, manipulate, create, modify, alter, and/or enhance digital images and graphics, and to modify elements, apply effects, and prepare images for various purposes, including but not limited to graphic design, exportation, importation, printing, etc." (ECF No. 45 at 3; ECF No. 46 at 10) and stated that it would stipulate to the construction "software that manipulates the image."

ImageSails derives its initial proposed construction from a Wikipedia entry for Adobe Photoshop. ECF No. 46 at 11 ("Adobe Photoshop is a computer program that can be used to prepare, size, manipulate, create[,] edit, modify, alter, retouch, and/or enhance digital images and graphics, and to modify elements and apply effects, and prepare images for various purposes, including but not limited to graphic design, exportation, importation, printing, etc. https://en.wikipedia.org/wiki/Adobe_Photoshop, etc.").

The plain language of the '618 patent is not limited to Photoshop. '618 patent at 4:51 ("Photoshop™ (or other similar image editing software) . . ."). But, even if the '618 patent exclusively referenced Adobe Photoshop, defining that product by relying on a Wikipedia entry is insufficient to support claim construction. Given the ever-changing and sometimes vandalized content of Wikipedia, several courts have rejected its use as extrinsic evidence. *See, e.g.*, *Nortek Air Sols., LLC v. DMG Corp.*, No. 14-CV-02919-BLF, 2015 WL 6674705, at *13 (N.D. Cal. Nov. 2, 2015) ("Defendants derive their construction from Wikipedia which is written by 'anonymous volunteers.' *See* http://en.wikipedia.org/wiki/Wikipedia:About (the 'About Wikipedia' entry). 'Anyone with Internet access can write and make changes to Wikipedia articles …from expert scholars to casual readers,' and '[Wikipedia] is more easily vandalized or susceptible to unchecked information.' *Id.* Without knowing who wrote the Wikipedia entry and their credentials, the Court cannot give any weight to a construction from Wikipedia . . .") (edits in the original); *Neev v. Abbott Med. Optics, Inc.*, No. CIV. 09-146 RBK, 2012 WL 1066797, at *12 (D. Del. Mar. 26, 2012) ("Defendant cites to the Wikipedia entry for a definition of 'plasma' . . . Because Defendant does not cite to any further authority in support of this proposed claim construction, the Court relies on the language of the patent itself and construes the term as 'plasma.'"). This is particularly true when a party offers a Wikipedia entry without corroboration

from an expert witness. *Cf. Vistan Corp. v. Fadei USA, Inc.*, 547 F. App'x 986, 990 (Fed. Cir. 2013) (relying in part on expert's "agree[ment] with a description from Wikipedia" to determine what a person of ordinary skill in the art would understand a term to mean on written description inquiry).

Moreover, ImageSails does not submit a copy of the Adobe Photoshop Wikipedia page or even a "last access" date to indicate when the description of Adobe Photoshop was added. Given the dynamic nature of Wikipedia, the Court cannot determine whether ImageSails's description of Adobe Photoshop's functionality existed at the time the application for the '618 patent was filed. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."); *F5 Networks Inc. v. A10 Networks, Inc.*, No. C10-654 MJP, 2011 WL 3516054, at *3 (W.D. Wash. Aug. 11, 2011) ("The Court finds F5's extrinsic evidence to be weak—articles from Wikipedia (where information is unattributed and can be added by anyone) . . . are not authoritative or persuasive sources. Furthermore, all the articles were published *after* the filing of these patents and are therefore immaterial for purposes of evaluating the understanding of a person of ordinary skill in the art *at the time of filing*.") (emphasis in the original).

ImageSails's new proposed construction of "image editing software" as "Software that manipulates the image" offers no greater clarity. As Precision Sails argued at the hearing, "manipulates" could have several meanings.

As both parties' proposed constructions lack support, the Court adopts a plain and ordinary meaning of the term "image editing software."

United States District Court
Northern District of California

**3. "prepare the image"**

| Disputed Term | ImageSails's Proposed Construction | Precision Sails's Proposed Construction | Court's Ruling |
|---|---|---|---|
| "prepare the image" | prepare the image[3] | the image is divided into panels, individual panels are prepared in .dwf format. The chosen image's digital file is sized, cropped, and divided correspondingly for the printing each individual panel. | Plain and ordinary meaning |

The patented method of claim 1 of the '618 patent includes several ordered steps. The claimed method starts by "identifying the size and shape of the wind-catching fabric," then involves "selecting at least one image to print to the wind-catching fabric." '618 patent at 8:49–51. Following the image selection, the method requires "using image editing software to edit and *prepare the image* for three-dimensional software editing." *Id.* at 8:54–55 (emphasis added). The parties dispute what it means to "prepare the image."

While ImageSails proposes that the Court apply the plain and ordinary meaning to the term, Precision Sails argues that for a construction of "the image is divided into panels, individual panels are prepared in .dwf format. The chosen image's digital file is sized, cropped, and divided correspondingly for the printing each individual panel." ECF No. 45 at 3; ECF No. 47 at 7. Precision Sails lifts this proposed construction from the specification, but again the proposal is flawed. First, the portion of the specification that Precision Sails relies upon refers to a process that occurs after the image has already been prepared and exported. *See* '618 patent at 4:4–5:6 (describing the digital preparation process). Second, Precision Sails's proposal again improperly imports a limitation from the specification into the patent claims. *Rex Med., L.P.*, 156 F.4th

[3] At the hearing, ImageSails confirmed its position that no construction is necessary.

at 1302; *Baldwin Graphic Sys., Inc.*, 512 F.3d at 1345. The Court thus declines to adopt Precision Sails's proposed construction for "prepare the image."

The Court therefore adopts a plain and ordinary meaning when construing this term. *See Phillips*, 415 F.3d at 1312–13.

## IV. CONCLUSION

The Court construes the claim terms as follows:

| Claim Term | Adopted Construction |
| --- | --- |
| "high-resolution" | Plain and ordinary meaning |
| "image editing software" | Plain and ordinary meaning |
| "prepare the image" | Plain and ordinary meaning |

**IT IS SO ORDERED.**

Dated: July 30, 2026

Noël Wise
United States District Judge