United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IMAGESAILS, LLC,

Plaintiff,

v.

PRECISION SAILS,

Defendant.

Case No. 25-cv-00193-NW

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: ECF Nos. 81, 83

Plaintiff ImageSails, LLC ("ImageSails") filed a complaint with a single cause of action against Defendant Precision Sails ("Precision Sails"), asserting that through its custom sail design and production activities Precision Sails infringes U.S. Patent No. 10,618,618 (the "'618 Patent"). *See, generally*, ECF No. 1. Precision Sails filed an answer asserting various counterclaims, including its request for declaratory judgment that it has not infringed the '618 Patent (Counterclaim I), and for declaratory judgment that the claims of the '618 Patent are invalid (Counterclaim II). ECF No. 32. Before the Court is Precision Sails' motion for summary judgment against Image Sails as to its patent infringement claim; Precision Sails also seeks judgment in its favor on its related first and second counterclaims. ECF No. 81 at 6. On September 22, 2026, the Court held a hearing on the motion.

The Court GRANTS IN PART and DENIES IN PART Precision Sails' motion.[1] The

[1] ImageSails filed an administrative motion to consider whether another party's materials should be sealed in connection with its opposition. ECF No. 83. ImageSails explains that certain documents filed with its opposition have been marked confidential by Precision Sails, but ImageSails "takes no position as to whether the documents and information identified" in the motion are appropriately designated. ECF No. 83 at 1, 5. Precision Sails has not filed a statement in support of sealing as required by Civil L.R. 79-5(f), and many of the documents ImageSails has attached contain either public or old information. Accordingly, the Court DENIES the sealing motion. The Clerk of Court shall unseal ECF Nos. 83-1–83-12.

Court GRANTS summary judgment of noninfringement and enters judgment against ImageSails on its sole cause of action. The Court also GRANTS the motion and issues a declaratory judgment for Precision Sails on its first counterclaim asserting that it has not infringed and is not infringing on the ’618 Patent. The Court DENIES summary judgment as to Precision Sails’ claims that the ’618 Patent is invalid.[2]

## I. BACKGROUND

ImageSails is the owner of the ’618 Patent. On January 6, 2025, ImageSails filed this lawsuit alleging infringement of its patent by Precision Sails. *See* ECF No. 1.

### A. The ‘618 Patent

The ‘618 Patent, entitled “Sail Printing Process,” was issued on April 14, 2020, and is directed to “[a] process of printing an image or images on the sails of a watercraft . . . without altering or compromising the efficacy of the sails is described.” ’618 Patent at (57) (Abstract).[3] Claim 1 of the ’618 Patent provides:

> 1. A method for printing high-resolution images to wind-catching fabrics without compromising the performance of the wind-catching fabrics comprising:
>
> [a] identifying the size and shape of the wind-catching fabric;
>
> [b] selecting at least one image to print to the wind-catching fabric;
>
> [c] using image editing software to size the image to the proportions of the wind-catching fabric;
>
> [d] using image editing software to edit and prepare the image for three-dimensional software editing;
>
> [e] exporting a two-dimensional copy of the at least one image from the image editing software;

[2] Precision Sails’ motion does not seek resolution of any of its remaining counterclaims, *i.e.*, its counterclaims for declaratory judgment of noninfringement and invalidity of ImageSails’ U.S. Patent No. 10,196,119 (the “’119 Patent”) (Counts III and IV), for violation of the Lanham Act (Count V), for unfair competition under California law (Count VI), or for intentional or negligent interference with Precision Sails’ relationships with its customers (Counts VII–VIII). Accordingly, the Court does not resolve these claims.

[3] Unless otherwise noted, record citations are to the Electronic Case File (“ECF”) and pinpoint citations are to the ECF-generated page numbers at the top of documents. For the ’618 Patent, citations are to the column/line number where available and otherwise to the parts of the patent.

[f] importing a three-dimensional image file with all geometric features of the wind-catching fabric, including a 1:1 dimension ratio and curvature of the wind-catching fabric;

[g] importing the two-dimensional copy of the at least one image on the three-dimensional image file corresponding to the dimensions of the wind-catching fabric;

[h] defining the size of the panels to include overlapping sections and margins for printing;

[i] placing key lines on the at least one image;

[j] exporting the panels as individual digital image files;

[k] printing the image of the individual digital image files to the wind-catching fabric using a large-format digital printer, forming printed panels;

[l] cutting the printed panels; and

[m] sewing the panels together with a sailmaker's loom.

'618 Patent at 8:46–9:6 (claim step numeration added for ease of reference); *see also* ECF No. 1 ¶¶ 11, 40, 42.

Figure 3 demonstrates a sail with an image printed via the process of the claimed invention:




Fig. 3



United States District Court
Northern District of California

’618 Patent, Fig. 3.

The parties submitted their first joint claim construction statement (“JCCS”) on November 17, 2025, agreeing upon the construction of 13 terms. ECF No. 45 at 2–6. The parties submitted briefing as to disputed terms and, at the *Markman* hearing, agreed to the construction of two further terms (“key lines” and “sailmaker’s loom”). *See* ECF No. 77 at 4. After the hearing, this Court issued its claim construction order on July 30, 2026, resolving the remaining disputed terms (“high-resolution,” “image editing software,” and “prepare the image”). ECF No. 77 at 12.

### B. Relevant Prosecution History of the ’618 Patent

ImageSails filed the ’618 Patent on February 4, 2019. ’618 Patent at (22). It was a continuation of non-provisional application no. 14/828,500 (the “’119 Application”), which issued as the ’119 Patent.[4] *Id.* at 1:5-10. During prosecution of the ’119 Application, on May 4, 2018, the patent examiner issued an office action *rejecting* representative claim 1, which recited a method for printing high-resolution images to sails:

- **identifying size and shape of the sail**;
- **selecting an image** to print to the sail;
- using image editing software to **size the image** to the proportions of the sail;
- using image editing software to **divide the image into panels** for printing;
- **maximizing the resolution** of the image to at least 150 dots per inch (DPI);
- **exporting** a two-dimensional **copy of the image** to a Cad program;
- **defining the size** of the panels to **include overlapping sections and margins** for printing;
- **preparing the panels** individually on the cad program **for alignment** to the sail;
- **placing key lines on the image;**
- **labeling the panels** consecutively;
- **saving the panels** as individual digital image files;
- **exporting the panels** saved as individual digital image files **to the printer;**
- **printing the image** of the individual digital image files to the sail using a large-format digital printer, thereby **forming printed panels;**
- **cutting the printed panels** with a plotter;
- **sewing the panels** together with a sailmaker’s loom; and

[4] The ’119 Application itself followed from provisional patent application no. 62/038,055, filed on August 15, 2014, and the ’618 Patent claims priority to that date. ’618 Patent at 1:5–10.

- **coating the panels** with an ultraviolet resistant coating.

ECF No. 81-8 at 4 (bolding in the office action).

The examiner explained that those portions highlighted in bold "constitute an abstract idea," likening them to a sail-design "algorithm" that could, at least in principle, be performed entirely mentally. *Id.* at 6. The examiner found that only claims 4 and 5 of the application were allowable, because they recited the additional specific details of "saturating the image by 25 percent; and printing performed by dye sublimation." *Id.* In a subsequent telephone interview with the examiner on September 12, 2018, the applicant added these two limitations directly into claims 1 and 8 to render them patentable, and canceled claims 2–7. ECF No. 81-9 at 4. The "saturating . . . by 25 percent" and "printing . . . by dye sublimation" limitations do not appear in claim 1 of the '618 Patent.

### C. Precision Sails' Operations and the Accused Process

Precision Sails is a small, independent sailmaker headquartered in Canada that specializes in "the process of sail design, sales of pre-made sails, and related hardware, gear, and accessories." ECF No. 81-10 ("Hodgson Decl.") ¶ 2.[5] Part of their business "includes facilitating customers who wish to customize their sails with art/graphics," but Precision Sails does not manufacture sails. *Id.* ¶¶ 2-3. Rather, once Precision Sails has aided with the design, "[t]hese sails are then moved to a third-party vendor that prints the art/graphics, and assembles the sails." *Id.* ¶ 3. That vendor, F.S. Tech. Co., Ltd. ("F.S. Tech"), is based in Hong Kong, China. *See* ECF No. 81-14 ("Xia Decl.") ¶ 1.[6]

#### 1. Precision Sails' "Custom Art/Graphics Services"

As part of its "custom art/graphics services," Precision Sails uses a specialized sail design software called SailPack. Hodgson Decl. ¶ 3. Precision Sails explains that SailPack "does not provide typical 'image editing software' features" such as those found in, *e.g.*, Adobe Photoshop. *Id.* Precision Sails notes that SailPack can "create and modify sail shapes, measure dimensions,

[5] Darryl Hodgson is the owner and CEO of Precision Sails. Hodgson Decl. ¶ 1.

[6] Jessie Zhao Xia is the owner of F.S. Tech. Xia Decl. ¶ 1.



United States District Court
Northern District of California

and calculate performance parameters such as twist and angles," but explains that the software cannot—without additional features offered with SailPack under a separate license—create "printer files" that could be sent to a sail printer. *Id.* ¶ 4. Precision Sails has never hired BSG Developpements ("BSG") (the company that owns SailPack) to do any of the steps required to create "ready-made print files of a customer's sails" and has not purchased any of the additional add-ons or upgrades to the basic SailPack software. *Id.*[7] ImageSails appears to agree as to SailPack's capabilities, noting that it has the "capability to import, manipulate, and project high-resolution graphics and photographs onto sails for the printing process via its dedicated 'Sail-Print service' module." ECF No. 82-83 ("Gohstand Decl.") ¶ 36.[8] The parties dispute whether, based on its capabilities, SailPack qualifies as "image-editing software." *Compare id.* ¶¶ 34, 36 *with* Hodgson Decl. ¶¶ 3–4.[9]

Precision Sails uses SailPack "to design and analyze boat sails for its customers." Hodgson Decl. ¶ 5. Specifically, Precision Sails uses SailPack to help customers visualize what the "custom art/graphic services will look like on the customer's sails." *Id.* Precision Sails takes screenshots of the design for the customer and shares them with third-party vendors "as an

[7] Precision Sails offers the declaration of Mr. Laurent Guillaume, an employee and representative of BSG, "that confirms that the SailPack licenses that we own do not include functionality for generating print files for printed sails." Hodgson Decl. ¶ 4; *see* ECF No. 81-20. ImageSails' counsel, however, declares that "Laurent Guillaume was not listed in Precision [Sails'] amended disclosures sent February 20, 2026[]" and was not mentioned in any answers to Plaintiff's interrogatories," so "Plaintiff could not depose Laurent Guillaume on his declaration." ECF No. 82-2 ("Murthy Decl.") ¶¶ 21–22. Thus, ImageSails argues it is entitled to cross-examine Mr. Guillaume at trial to test his declaration. *Id.* Precision Sails does not respond in reply. Rather than deny Precision Sails' motion for including this unexpected declaration from Mr. Guillaume, the Court **STRIKES** the declaration of Mr. Guillaume and does not consider it. *See* Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; . . . or (3) issue any other appropriate order.").

[8] The Court **SUSTAINS** Precision Sails' objections to paragraph 36 of the Gohstand Decl. and exhibits 20 and 21 submitted by ImageSails but cites these paragraphs to show ImageSails' positions on this issue. The Court does not rely on this proffered evidence to reject Precision Sails' non-infringement argument as to "image editing software." *See, infra*, § III.A.3.

[9] The Court **OVERRULES** Precision Sails' objections to paragraph 34 of the Gohstand Decl. Paragraph 34 does not appear to be offered as a fact but as the witnesses' opinion (like the opinions included in Mr. Hodgson's declaration), and the Court considers each only insofar as they evidence the parties' positions.

example of graphic/logo placement only. However, these screenshots contain no information of sizing the image to the proportions of the sail/wind-catching fabric," as shown in an exemplary screenshot (on the right) below:




Hodgson Decl. ¶ 5; *see also* ECF No. 81-13 (Copies of Precision Sails Screenshots).

Once a customer's sail is designed in SailPack, Precision Sails "send[s] a screenshot from SailPack of how the image/graphic may look on the sail to [their] third-party vendor [*i.e.*, F.S. Tech], who then handles the printing of the art/graphic and assembly of the sail." *Id.* ¶ 11. In doing so, Precision Sails does not, and could not, "transfer data containing a three-dimensional image file" to its printing vendor either because SailPack "is not capable of" converting data from its two-dimensional image "onto a file which includes length, width, and depth," or because Precision Sails does not know "how to do this[.]" *Id.* ¶¶ 6–7. Precision Sails provides a representative "sail design cut" and "production order" files that it sends to its printing vendor. *Id.* ¶ 8; *see* ECF No. 81-12. These files, according to Mr. Hodgson, do not "define the size of the panels to include overlapping sections and margins for printing." *Id.* Precision Sails also does not save a two-dimensional file of individual pieces of the sail. *Id.* ¶ 10. "The only 'image,' or 'digital image file,' [Precision Sails] export[s] and send[s] to [their] printing vendor is a flat 2D

image of the logo/graphic." *Id.*

Precision Sails does not do any of the printing, cutting, or sewing of the sails – that work is performed by F.S. Tech in China. *Id.* ¶¶ 13–14, 17.

**2. F.S. Tech's Process and the Extent of Precision Sails' Involvement**

Precision Sails submitted a third-party declaration from F.S. Tech regarding F.S. Tech's printing process. *Id.* ¶ 18; *see* Xia Decl. F.S. Tech receives graphic/image information from Precision Sails in the form of one two-dimensional, digital image file, "typically in low resolution [as a] .JPEG or .PNG file[.]" *Id.* ¶ 4. F.S. Tech does not place lines on this image or on the sale for purposes of alignment. *Id.* ¶ 5. It uses its printing process to prepare and print the image on individual pieces of the sails, and then to cut and sew them together to form a finished sail. *Id.* ¶ 6. The entirety of F.S. Tech's process takes place at F.S. Tech's factory in China. *Id.* ¶ 7.

F.S. Tech provides printing services for Precision Sails "on a periodic project by project basis." *Id.* ¶ 2. Precision Sails has no ownership of F.S. Tech and there is no agreement or contract between the companies. *Id.* ¶ 3; Hodgson Decl. ¶ 16. Precision Sails "never sends [F.S. Tech] instructions on how to print graphics on sails, cut, and/or sew the individual panels of sails cloth," and F.S. Tech acts "with total independence from Precision Sails." Xia Decl. ¶ 3; Hodgson Decl. ¶ 15.

All of Precision Sails "custom art/graphics services" are performed in Canada. *Id.* ¶ 12. Mr. Hodgson avers that Precision Sails does not ship finished sails from Canada to the United States. *Id.* But as ImageSails points out, Precision Sails does sell sails to customers worldwide, including within the United States. Gohstand Decl. ¶¶ 68–73; ECF No. 82-27 (Precision Sails' website includes a review from a customer stating that "Covid took over the world and I had the sails shipped to a relative in the US."); ECF No. 82-30 (Precision Sails' website showcasing "[t]wo mainsails made for two Precision 15's in California and Florida[.]").[10] There are no facts

[10] The Court **OVERRULES** Precision Sails' objections to paragraphs 68–73 of the Gohstand Decl. and ECF Nos. 82-27 and 82-30. The exhibits are images of Precision Sails' own website and thus are not hearsay because they are statements of an opposing party. *See* Fed. R. Evid. 801(d)(2). And Mr. Gohstand's statements appear to be offered to authenticate and lay a foundation for the website-screenshots, which the Court will permit.

from any party explaining how the finished sails are delivered to the customer, but Precision Sails argues in its motion that they are sent "directly from a company in China." ECF No. 81 at 18.

### D. The Related *North Sails* Litigation and the "Sleighride" Sail

Prior to this action, ImageSails sued another defendant, North Sails Group LLC, in *ImageSails, LLC v. North Sails Group LLC*, 5:24-cv-07155-NW (filed Oct. 15, 2024) (the *North Sails* action). The same patent was at issue in that case, and this Court related the cases on January 27, 2026. *See id.*, ECF No. 98. At one point, in its first amended complaint and its second amended infringement contentions, ImageSails accused North Sails Group's "Sleighride" sail of evidencing infringement of the '618 Patent. *See id.*, ECF No. 15, ¶¶ 40, 44 (in the first amended complaint); *id.*, ECF No. 65-3 at 282–83 (in the second amended infringement contentions). But ImageSails later removed "Sleighride" from its infringement contentions, and it was not accused in ImageSails' operative, fourth amended infringement contentions. *See id.*, ECF No. 73-1.

Dan Neri, former CEO of North Sails Group, declares (in support of Precision Sails motion here) that the "Sleighride" sail was sold and delivered to a customer in 2003 and, in any event, exhibited no later than July 28, 2005, *approximately 14 years before the '618 Patent*. ECF No. 81-16 ("Neri Decl.") ¶¶ 1, 11, 13–15. Mr. Whitney Gladstone, owner of "North Graphics" (North Sails Group's sail design and printing vendor at the time) submitted a declaration in this action explaining the process by which "Sleighride" was made. ECF No. 81-15 ("Gladstone Decl.").

## II. LEGAL STANDARD

### A. Summary Judgment

A court shall grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the

United States District Court
Northern District of California

"moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id.* at 1103. The court must view the evidence in the light most favorable to the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A genuine issue of material fact exists if there is sufficient evidence such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248. In assessing summary judgment, the Court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *See id.* at 249.

**B. Patent Infringement**

"To infringe a method claim, a person must have practiced all steps of the claimed method." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009). "An infringement analysis involves two steps. First, the court determines the scope and meaning of the patent claims asserted" as a matter of law. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc). The Court "must then compare the properly construed claims to the allegedly infringing [process]." *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1273 (Fed. Cir. 2004) (citing *id.*). "The second step is a factual question." *Id.* Judgment of non-infringement "is appropriate if no reasonable fact finder could determine that a claim limitation is met in the accused [process]." *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 981 (Fed. Cir. 1999).

**C. Patent Invalidity**

35 U.S.C. §§ 101 and 102 set forth certain requirements for an invention to be patentable. Under Section 101, "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). Under Section 102(a), an invention is not patentable if it is "described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention . . . ." 35 U.S.C. § 102(a). But under Section 282, patents are "presumed valid." 35 U.S.C. § 282(a). "The burden is on the party asserting invalidity to prove it with facts supported by clear and convincing evidence." *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1365 (Fed. Cir. 1999).

"[A]nticipation is a question of fact [that] may be decided on summary judgment if the

record reveals no genuine dispute of material fact." *Encyclopaedia Britannica, Inc. v. Alpine Elecs. of Am., Inc.*, 609 F.3d 1345, 1349 (Fed. Cir. 2010). But invalidity under Section 101 "is a question of law that may be based on underlying factual findings." *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1366–67 (Fed. Cir. 2024). It may be resolved "where the undisputed facts, considered under the standards required by [a] Rule, require a holding of ineligibility under the substantive standards of law." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (explaining that Section 101 invalidity may even be resolved on a motion for judgment on the pleadings or a motion to dismiss); *see also Broadband iTV*, 113 F.4th at 1366–67.

## III. DISCUSSION

Precision Sails seeks summary judgment on three issues. First, Precision Sails argues that, for various reasons, its accused process does not infringe claim 1 of the '618 Patent. ECF No. 81 at 6. Second, Precision Sails seeks judgment that the '618 Patent is invalid due to North Sails Group's 2003 sale of its "Sleighride" sail. *Id.* at 6, 12–13. Third, Precision Sails seeks judgment that the '618 Patent is invalid as abstract, non-patentable subject matter. *Id.* at 6. The noninfringement issues go to ImageSails' cause of action in its Complaint and to Precision Sails' first counterclaim, while the invalidity issues serve as a defense to ImageSails' cause of action in its Complaint and to prove Precision Sails' second counterclaim.

For the following reasons, the Court finds that Precision Sails does not infringe the '618 Patent but declines to find that the '618 Patent is invalid either as directed to an abstract idea or as anticipated by the "Sleighride" prior art.

### A. Precision Sails Does Not Infringe Claim 1 the '618 Patent

#### 1. Precision Sails Does Not Perform the "Printing," "Cutting," and "Sewing" Steps and Does Not Direct or Control Its Printing Vendor

"A method patent claims a number of steps; . . . the patent is not infringed unless all the steps are carried out." *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) [hereinafter *Limelight*]. This means that the performance of all the patent's steps must be attributable to a single person (or entity). *See id.* at 921–22; *Akamai Techs., Inc. v. Limelight*

*Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) [hereinafter *Akamai*] (on remand from *Limelight* and on rehearing en banc). "Where more than one actor is involved in practicing the steps, a court must determine whether the acts of one are attributable to the other such that a single entity is responsible for the infringement." *Akamai*, 797 F.3d at 1022. An entity can be held "responsible for other's performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise." *Id.*

It is undisputed that, assuming Precision Sails performs the '618 Patent's "design" steps (*i.e.*, steps [a]–[j]), it does not print, cut, or sew the sails. The "printing," "cutting," and "sewing" steps ([k]–[m]) are performed, if at all, by its vendor F.S. Tech. *See* ECF No. 82 at 7, 17–18 (not contesting that infringement is divided but arguing that there is a dispute of fact as to whether the *Akamai* test is met).[11] ImageSails also does not argue that Precision Sails and F.S. Tech form a joint enterprise. *Id.* The only question that remains is whether F.S. Tech's actions are attributable to Precision Sails for the purposes of infringement based on a "direction or control" theory.

"To determine if a single entity directs or controls the acts of another, [the Federal Circuit] consider[s] general principles of vicarious liability. . . . [A]n actor is liable for infringement under § 271(a) if it acts through an agent (applying traditional agency principles) or contracts with another to perform one or more steps of a claimed method. . . . [L]iability under § 271(a) can also be found when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Akamai*, 797 F.3d at 1023. "Whether a single actor directed or controlled the acts of one or more third parties is a question of fact[.]" *Id.*

Mr. Hodgson and Ms. Xia, on behalf of Precision Sails and F.S. Tech, respectively, have submitted declarations stating that Precision Sails: has no ownership of F.S. Tech; exerts no

[11] During the hearing, Precision Sails' counsel characterized the "design" steps which Precision Sails arguably performs as including only the first eight steps, *i.e.*, [a]–[h]. This is in tension with Precision Sails' brief, which characterizes the "printing steps" as including "steps such as printing the image/graphic on the sails, cutting, and then sewing the sails." ECF No. 81 at 7. The exact delineation is immaterial to the Court's decision, however, because ImageSails did not dispute at the hearing that Precision Sails' vendor performed at least the printing, cutting and sewing steps.

United States District Court
Northern District of California

control over F.S. Tech; and has not "entered into any agreements and/or contracts" with F.S. Sails. Hodgson Decl. ¶¶ 15–16; Xia Decl. ¶ 3. They also testify that Precision Sails "never sends [F.S. Tech] instructions on how to print graphics on sails, cut, and/or sew the individual panels of sails cloth[.]" *Id.*

ImageSails' only response is that direction and control will depend "on evidence concerning the specificity of Precision's design files and instructions, whether the vendor may deviate from Precision's specifications, whether continued vendor payment or business is conditioned on adherence to those specifications, and the parties' course of dealing over time," and thus this dispute must go to a jury. ECF No. 82 at 17. But ImageSails does not cite *any* evidence of such a relationship between Precision Sails and F.S. Tech, and the declarations of Mr. Hodgson and Ms. Xia are clear and to the contrary.

As Precision Sails notes, if ImageSails "wanted to prove [that Precision Sails exercised] direction or control [over F.S. Tech], [ImageSails] needed evidence such as: a contract giving Precision operational authority [over F.S. Tech], evidence that Precision dictated how the vendor performed each step, evidence of supervision or approval rights over the vendor's process, or proof of an agency or employment relationship. **The record contains none of that because Plaintiff has failed to take any depositions in the matter or send out any subpoenas in this matter**." ECF No. 86 at 13 (emphasis added). Where Precision Sails has provided evidence sufficient to support its motion for summary judgment, ImageSails may not merely point to factual issues – it "must produce evidence to support its claim[.]" *Nissan Fire*, 210 F.3d at 1102. It "cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).[12]

[12] Precision Sails also argues in reply that ImageSails' argument is wrong as a matter of law, relying on *NTP, Inc. v. Research in Motion* or the proposition that normal "arms-length cooperation . . . will not give rise to direct infringement by any party." ECF No. 86 at 11 (citing, 418 F.3d 1282, 1317-18 (Fed. Cir. 2005)). Precision Sails' reliance is misplaced, because those quotes do not appear in *NPT* but rather in *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008) (in a passage citing *NPT* as supporting authority). The Federal Circuit has since explained, when it "reaffirm[ed] the concept of a single-actor theory of direct infringement" in *Akamai*, it abrogated *Muniauction*'s strict rule and "broaden[ed] the circumstances in which

In sum, a plaintiff may not fail to take discovery and then plead a lack of evidence to avoid summary judgment.[13] The record before the Court on this issue contains only the unequivocal and uncontroverted declarations of Mr. Hodgson and Ms. Xia. Accordingly, the Court finds there is no genuine dispute as to the factual issue of Precision Sails' lack of direction and control over F.S. Tech.

Because Precision Sails does not direct or control the activities of F.S. Tech, and it is undisputed that F.S. Tech, not Precision Sails, performs the "printing," "cutting," and "sewing" steps of the accused process, the Court finds that Precision Sails does not infringe the method of the '618 Patent and GRANTS its motion for summary judgment of noninfringement.[14]

**2. Precision Sails' Does Not Perform the Method in the United States**

The Court also agrees that Precision Sails does not infringe claim 1 of the '618 Patent for an independent reason: it does not perform the method in the United States.

To prove direct infringement under 35 U.S.C. § 271(a), ImageSails must prove infringing activity—making, using, selling, offering to sell, or importing—in the United States. Although ImageSails argues that there is a dispute over where Precision Sails performs the "image-selection, image-editing, and 3D modeling steps recited in Claim 1," ImageSails cites only the evidence that Precision Sails has sold finished sails, and that *someone* (by inference, F.S. Tech) has imported them, into the United States. ECF No. 82 at 12 (citing ECF No. 82-2 ¶ 23; *see also* Gohstand Decl. ¶¶ 68–73; ECF No. 82-27; ECF No. 82-30. So, there is no genuine dispute of fact that

---

others' acts may be attributed to an accused infringer"; after *Akamai*, a "standard contract" could be sufficient. *See Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1381 (Fed. Cir. 2017). The Court admonishes Precision Sails to ensure the accuracy of every authority it references in briefs or oral argument, including quotations and citations.

[13] Indeed, at the hearing, ImageSails' counsel confirmed that it did not take depositions in this matter by choice, explaining that ImageSails did not expect Precision Sails' representatives to admit to infringement.

[14] "[I]t is horn-book law that liability for either active inducement of infringement or contributory infringement is dependent upon the existence of direct infringement." *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1372 (Fed. Cir. 2006). Because it also cannot be said that F.S. Tech alone directly infringed, any claims that Precision Sails induced or contributed to such infringement likewise fail.

neither Precision Sails nor F.S. Tech perform their associated method steps within the United States; they act in Canada and China, respectively. *See, supra*, § I.C. And a method "consists of doing something, and therefore has to be carried out or performed." *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008). The Federal Circuit has repeatedly rejected efforts by patentees to hold an accused infringer liable for sale or importation of a patented method, although it has declined to "definitively answer th[e] question" of whether a method claim could ever be infringed under the "sells," "offers to sell" or "imports" prongs of Section 271(a). *See id*. at 1334; *NTP, Inc. v. Rsch. In Motion, Ltd.*, 418 F.3d 1282, 1321 (Fed. Cir. 2005). As even the sale of software embodying the steps of an asserted patent does not infringe a method claim, this Court finds that selling a finished sail made with a third party using the accused process is even more attenuated and does not suffice to infringe the patent. *Cf. Rioch*, 550 F.3d at 1335 ("[A] party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent[.]").

For this independent and alternative reason, the Court GRANTS summary judgment of noninfringement to Precisions Sails.[15]

**B. The Court Declines to Invalidate the '618 Patent on Summary Judgment**

In its second counterclaim, Precision Sails seeks declaratory judgment that the claims of

[15] Precision Sails' remaining noninfringement arguments are unpersuasive, and the Court does not rely on them to find noninfringement. Specifically, Precision Sails argues that even as to the "non-printing 'digital' steps in Claim 1," it does not perform steps [c]–[d] and [f]–[j]. ECF No. 81 at 7, 10, 17. But of its arguments on these steps, the only argument Precision Sails develops in any detail is that the SailPack software "is a specialized sail making/design software [and] not an image editing software." *Id.*; *see also* ECF No. 86 at 14. The Court is not "required to address perfunctory and undeveloped arguments," and so it addresses only this "image editing software" argument. *See, e.g.*, *Khademi v. S. Orange Cnty. Cmty. Coll. Dist.*, 194 F. Supp. 2d 1011, 1027 (C.D. Cal. 2002) ((internal quotation marks and citations omitted)). As to this argument, the Court construed "image editing software" to have its plain and ordinary meaning. ECF No. 77 at 7–10, 12. As ImageSails argues, even though SailPack "is not a 'general' image editing software," the claim does not require "general" image editing software and SailPack can "design[] boat sails and is used to model, shape and calculate precise specifications for sails and rigs." ECF No. 82 at 10 (citing the Hodgson Decl. and Gohstand Decl.). A reasonable jury could find that software that can "create and modify sail shapes [and] measure dimensions," as Precision Sails admits SailPack can do, is an image editing software. *See* Hodgson Decl. ¶ 4. Precision Sails also argues there is no infringement under the doctrine of equivalents as to the same steps addressed above (steps [c]–[d] and [f]–[j]). ECF No. 81 at 20–21. But just as a reasonable jury could conclude that SailPack is an image editing software, it could also conclude that even if it is not, it performs substantially the same function in substantially the same way to achieve substantially the same result.

the ’618 Patent are invalid. ECF No. 32 at 14. Precision Sails motion raises two grounds for invalidity. First, that claim 1 of the ’618 Patent is invalid as anticipated by North Sails “Sleighride” sail for being “offered for sale and sold more than one year before the effective filing date” of the ’618 Patent, and, second, that claim 1 of the ’618 Patent is invalid as directed to an abstract idea. The Court addresses each argument in turn.

**1. There is a Genuine Dispute of Fact as to Whether the “Sleighride” Sail Discloses the Method of the ’618 Patent**

Precision Sails’ argument as to the “Sleighride” sail is not well-taken. As an initial matter, Precision Sails cites the incorrect law, relying on the pre-Leahy-Smith America Invents Act (“AIA”) version of 35 U.S.C. § 102(b). ECF No. 81 at 21 (citing 35 U.S.C. § 102(b) (1994)). But the ’618 Patent claims priority to a provision application filed on August 15, 2014. *See* ’618 Patent at 1:5–10. Patents and applications with effective filing dates on or after March 16, 2013, are subject to the post-AIA patentability requirements, including the post-AIA version of Section 102. *E.g.*, *SNIPR Techs. Ltd. v. Rockefeller Univ.*, 72 F.4th 1372, 1376 (Fed. Cir. 2023). The post-AIA version of Section 102 includes different on-sale anticipation requirements: an invention is not patentable if it is “described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention . . .[,]” except for certain 1-year grace periods not at-issue here. 35 U.S.C. § 102(a) (post-AIA). The parties’ arguments directed to the on-sale bar as it existed in Section 102(b) are therefore unhelpful.

Even treating Precision Sails’ “on-sale bar” argument as an argument for anticipation under Section 102(a), however, the argument is not persuasive. “To anticipate a claim, a prior art reference must disclose every limitation of the claimed invention, either explicitly or inherently.” *Atlas Powder Co. v. Ireco Inc.*, 190 F.3d 1342, 1346 (Fed.Cir.1999). Precision Sails raises only two arguments for anticipation. First, based on Mr. Gladstone’s declaration, Precision Sails argues that invalidity is clear. *See* ECF No. 81 at 28. But ImageSails objects that Mr. “Gladstone was not listed in Precision’s amended disclosures” in 2026 “is not mentioned in any answers to Plaintiff’s interrogatories by Precision,” and that it must be permitted to cross-examine Mr. Gladstone at trial. ECF No. 82 (citing ECF No. 82-2 ¶¶ 19–20). This argument is well-taken and,

as with Mr. Guillaume, (*see, supra*, n. 7) the Court **STRIKES** the declaration of Mr. Gladstone and does not consider it. *See* Fed. R. Civ. P. 56(d).

Precision Sails' only other argument for anticipation is that ImageSails' own infringement contentions in the related *North Sails* action, at one point, accused the "Sleighride" sail of infringement. ECF No. 81 at 21–24, 25–26. Precision Sails argues that because (1) "Plaintiff admits the 'Sleighride' sail practices claim 1" by way of its *North Sails* infringement contentions, and (2) "[t]he same sail was sold and publicly displayed years earlier," there is therefore (3) no "real factual dispute" that "the alleged invention existed in the public domain" years before '618 Patent." ECF No. 81 at 23–26 (citing *Evans Cooling Sys., Inc. v. Gen. Motors Corp.*, 125 F.3d 1448, 1451 (Fed. Cir. 1997)). While it is true that where "the entire basis of [a] lawsuit is . . . the patentee's[] contention that [an accused] device" infringes its patent, if that device was sold early enough to be considered prior art, it will invalidate the patent, *Evans Cooling* only applied this "admitted invalid" rationale to *accused* products. *Cf.* 125 F.3d at 1451.

Here, Precision Sails' "admitted invalid" argument does not carry the day for several reasons. First and foremost, the *North Sails* action is not *this* action, and ImageSails does not accuse the "Sleighride" sail of infringing in this case. *See* ECF No. 82-4 (ImageSails' infringement contentions claim chart in this action). This is especially significant because infringement and invalidity based on the "Sleighride" sail were never adjudicated in the *North Sails* action; the Court denied summary judgment on that issue, and ImageSails voluntarily dismissed the action with prejudice a couple of months later. *See ImageSails v. North Sails*, 24-cv-7155-NW, ECF Nos. 118, 135. Second, even in that case, Precision Sails points to the second infringement contentions, not the operative contentions – meaning that ImageSails did not maintain its allegation that the manufacture of the "Sleighride" was infringing. *Compare ImageSails v. North Sails*, 24-cv-07155-NW, ECF No. 65-3 *with id.* ECF No. 73-1.

There is, at a minimum, a genuine dispute as to whether the "Sleighride" explicitly or inherently discloses each step of the claimed process. Precision Sails' motion for summary judgment on this ground is DENIED.

United States District Court
Northern District of California

### C. Precision Sails Has Not Met Its Burden to Show the ’618 Patent is Invalid as Directed to an Abstract Idea

Finally, the Court turns to Precisions Sails Section 101 argument. Under Section 101, only a “new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof” is patentable. 35 U.S.C. § 101. The Supreme Court has “held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable.” *Alice Corp. Pty. v. CLS Bank Int’l*, 573 U.S. 208, 216 (2014). Under the two-step framework set forth in *Alice*, first, a court must “determine whether the claims at issue are directed to a patent-ineligible concept.” *Id.* at 217. If so, the Court assesses whether the elements of the claim, both individually and as an ordered combination, transform the nature of the claim into a patent eligible application. *Id*. This second step of the analysis is “a search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.” *Id.* at 217–18.

Precision Sails argues that claim 1 of the ’618 Patent is directed to an abstract idea and is therefore patent ineligible subject matter. The Court has serious reservations as to the validity of the ’618 Patent. But Precision Sails’ arguments—which fail to apply the *Alice* framework or cite any caselaw for giving preclusive effect to a lone excerpt of the prosecution history—do not meet its burden on summary judgment.

Precision Sails’ argument relies exclusively on the fact that the ’119 Application contained a claim with certain elements identical to the ’618 Patent, and those elements were rejected as abstract by a patent examiner in an office action. ECF No. 81 at 28–30; ECF No. 86 at 16–17. Precision Sails’ argument has some persuasive force: “When multiple patents derive from the same initial application, the prosecution history regarding a claim limitation in any patent that has issued applies with equal force to subsequently issued patents that contain the same claim limitation.” *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999). Nonetheless, ImageSails rightly criticizes Precision Sails for not engaging with the *Alice* framework and not providing the remainder of the prosecution history of the ’618 Patent. This Court cannot engage

in the *Alice* analysis on Precision Sails' behalf and, at least without the full prosecution history, cannot give the isolated rejection pointed to by Precision Sails dispositive weight. To do so would require this Court to assume the U.S. Patent and Trademark Office, which had the prosecution history of the '119 Application before it, made a mistake in allowing claim elements identical to those it had previously rejected.[16] Such an assumption is antithetical to the presumption of validity. *Cf. Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1569 (Fed. Cir. 1996) ("The presumption of validity is based on the presumption of administrative correctness of actions of the agency charged with examination of patentability. [T]he government agency is presumed to have done its job." (internal citations omitted)).

Precision Sails has not met its burden of proof to establish, by clear and convincing evidence, that something else did not occur that made the examiner reconsider – *e.g.*, that in the subsequent prosecution of the '618 Patent, upon attorney argument, the examiner was convinced to withdraw the *Alice* rejection. The Court DENIES Precision Sails' motion for summary judgment of invalidity on this ground.

* * *

Precision Sails' motion for summary judgment of invalidity is DENIED.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Precision Sails' motion for summary judgment as to noninfringement of the '618 Patent, but DENIES Precision Sails' motion as to invalidity of the '618 Patent. Accordingly, the Court GRANTS Precision Sails' motion and enters judgment for Precision Sails on ImageSails' single cause of action, GRANTS Precision Sails' motion for summary judgment as to its first counterclaim, and DENIES Precision Sails' motion for summary judgment as to its second counterclaim. The Court maintains the existing trial dates for Precision Sails' remaining counterclaims.

The parties are ORDERED to meet and confer and to provide the Court with a joint

[16] At the hearing, Precision Sails' counsel was explicit that this is what the argument assumes, arguing that "Somehow, the Examiner missed it. We're not sure what happened there, but PTO approved the '618 Patent." *See* Sept. 22, 2026 Hrg.

United States District Court
Northern District of California

submission by no later than September 28, 2026, regarding what additional ADR if any should occur in advance of trial given the Court's ruling on this motion. The Court maintains the October 1, 2026 status conference. All counsel must appear in person.

**IT IS SO ORDERED.**

Dated: September 24, 2026

Noël Wise
United States District Judge